UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 416 |
| | ) | |
| vs. | ) | Honorable Gary Feinerman |
| | ) | |
| CHARLES B. ESTELL | ) | |

**Government's Sentencing Memorandum**

The UNITED STATES of AMERICA, through its attorney, ZACHARY T. FARDON, respectfully submits the following position paper as to sentencing factors, and asks this Court to impose a sentence of imprisonment at the upper end of the advisory guideline range of 262-300 months on Count One, followed by a consecutive sentence of 84 months on Count Two. In support of its recommendation the government states as follows:

**I. Presentence Report**

The Government has no objections or corrections to the presentence investigation report, and agrees with the guideline calculations as set forth therein.

**II. Background**

On June 2, 2012, defendant committed an armed bank robbery in Oak Lawn, Illinois. On September 17, 2013, following a jury trial in which defendant testified in his own behalf, he was convicted of both with

committing an armed bank robbery and using and brandishing a loaded firearm during the robbery. The indictment contained a forfeiture count, to which, defendant waived his right to a jury determination and will rely upon the court at the time of sentencing to make a determination.

## III. Sentencing Guidelines

Although the Guidelines are advisory, the Supreme Court has stressed that the district court must treat them as "the starting point and initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). As such, the district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the guidelines range. *Id.*

### A. Properly Calculated Guidelines Range

The November 2013 *Guidelines Manual* is now in effect. Under Guideline 2B3.1(a)(2) and 3C1.1, defendant's offense level is 28. PSR at 10-11. However, pursuant to Guideline 4B1.1 that level increases to 34 based upon his career offender status. *Id.* at 11. With offense level 31, and a criminal history category VI, defendant's guidelines range on Count One is 262 to 327 months, however the statutory maximum of 25 years limits the

2

range to 262 to 300 months.  As to Count Two, there is a 7-year mandatory minimum and a maximum of life imprisonment.  The Guideline range is properly calculated.

### B.   Defendant's Guideline Disputes/Claims

Defendant asserts that the offense level for Count One should be calculated at 24 rather than 28, asserting that there should be no enhancement for either the amount of the loss or for obstruction. Defendant's position is incorrect, but is irrelevant given his status as a career offender.   As noted in the PSIR, defendant's status as a career offender results in an offense level of 34 which would be true even if the underlying calculation for Count One was 24 rather than 28.  PSIR at 11.

### Loss

Defendant does not dispute that he took $230,000 in the robbery, but claims the recovery of the robbery proceeds resulted in no actual loss to the bank, and consequently no adjustment for loss.  Defendant offers no support for this claim, and his interpretation of loss is at odds with the Guidelines. Application note 7 to Guideline 2B3.1 which explains, " 'Loss' means the value of the property taken . . ."

### Obstruction

3

Defendant is similarly mistaken as to the appropriateness of the obstruction enhancement. In this case, defendant misled the FBI and the court regarding his possession of a firearm – he claimed it was a toy – as well as to the details of his abduction and coercion story. See *United States v. Brock*, 58 Fed. Appx.642, 645-46 (C.A.7 (Ill.) (2003) (Imposition of two-level enhancement for obstruction following conviction for bank robbery was supported by evidence that defendant misled police, probation, and court.) The obstruction of justice enhancement is further supported by defendant's perjury at trial regarding the circumstances of the crime, his claimed abduction, and the alleged post-crime threats by unknown individuals. *United States v. Price*, 516 F.3d 597,606 (7th Cir. 2008) (enhancement appropriate where witness gives false testimony about a material matter and court found the testimony "simply unreasonable and in my opinion untrue at trial.")

**Career Offender**

Defendant qualifies as a career offender because he was at least 18 years old at the time of the offense of conviction; the instant offense resulting in a conviction is a felony that is a crime of violence; and defendant had at least two prior convictions of either a crime of violence or controlled

4

substance offense. (vehicular hijacking 07 CR 1021001, Circuit Court Cook County; conspiracy to deliver controlled substances, 94-0306904-CR-S-4 in the District of Missouri, and possession of controlled substances for sale SCD21672, Superior Court of San Diego).

**Acceptance of Responsibility**

Defendant also mistakenly asserts that he is entitled to a three-level reduction for acceptance of responsibility. Guideline 3E1.1 provides for a two-level decrease in the offense level if the defendant clearly demonstrates acceptance of responsibility for his offense.[1] It is defendant's burden to establish by a preponderance of the evidence that he is entitled to such a reduction, and a court is entitled to find lack of acceptance where a defendant sought to shift blame to another. *United States v. Gibson*, 155 F.3d 844, 848 (7th Cir. 1998). Here, defendant sought to shift the blame for the offense to multiple unidentified individuals who scaled his apartment building, abducted him, held him hostage, then deposited him alone for hours in the roof of the bank with instructions to rob it. Moreover, a district court may impose the enhancement for perjury. Guideline 3C1.1 cmt. 4(b). Perjury

---

[1] An additional one-level decrease under 3E1.1(b) may only be granted upon a formal motion by the Government, and requires a defendant to have notified authorities of his intention to enter a guilty plea at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently. See App. Note 6.

occurs when a witness testifying under oath gives false testimony about a material matter with the willful intent to provide false testimony, instead of as a result of confusion, mistake, or faulty memory." *United States v. Williams*, 553 F.3d. 1073 (7th Cir. 2009); <u>See also</u> *United States v. Akindele*, 84 F.3d 948,957 (7th Cir. 1996) (if defendant denies conduct which court determines to be true, defendant cannot claim he accepted responsibility for actions); *United States v. Seidling*, 737 F.3d 1155, 1162 (7th Cir. 2013) (no acceptance where defendant did nothing to suggest he believed he committed any real offense or felt any responsibility for harm he caused)

**Criminal History**

Defendant claims that his criminal history incorrectly includes his November 27, 1995 conviction for Conspiracy to Distribute Controlled Substances, because it was a conviction more than 15 years old. Defendant is mistaken. Guideline 4A1.2(e) states "Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period. Defendant's 1994 conviction resulted in a 135 month sentence, which clearly placed defendant's period of incarceration with in the 15 year limitation. If that were not sufficient, the supervised release on this charge

was revoked in April 2009 and he was sentenced to an additional period of 24 months imprisonment. As set forth in Guideline4A1.2(k)(2) a revocation of supervised release may affect the time period under which certain sentences are counted. In either event, the criminal history calculation as set forth in the PSIR is correct.

## III. Sentencing Factors Under 18 U.S.C. 3553(a)

The framework for determining an appropriate sentence is set forth in 18 U.S.C. § 3553(a), which requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities.

### A. Nature and Circumstances of the Offense

The offense was premeditated, deliberate, and the result of considerable planning. Bank robberies are by nature violent traumatizing events which place employees, civilians and law enforcement officers at risk. Above and beyond the general risk attendant with such crimes is the

7

particular details of his crime.   In planning the robbery, defendant engaged in extensive planning, obtaining the surveillance camera, conducting research, engaging in surveillance of the movement and vehicles of the bank employees, obtaining a disguise, assembling the tools to commit the offense – including multiple methods of restraints.   In executing the crime, defendant lay in wait for hours, concealed in the roof above the vault for almost 12 hours, and then after making entry, bound, gagged, and threatened two female bank employees at gunpoint.  Defendant committed the offense while armed with a handgun containing an extended magazine containing 19 rounds, some of which were hollow-point bullets capable of causing enhanced injuries.   The surveillance video clearly shows his deliberate and methodical conduct in the course of the robbery as well as his repeated approaches to the victims.

### B. History and Characteristics of Defendant

Defendant's criminal history demonstrates that he has engaged in an (escalating) pattern of criminal behavior and, despite frequent intervention by law enforcement, he continues to engage in increasingly violent behavior. His criminal conduct included:

October 1994: Conspiracy to Distribute Cocaine Base, sentenced on November 27, 1997 to 135 months imprisonment. On April 1, 2009, Defendant received an additional 24 months imprisonment on this charge following his violation of supervised release related to his April 1, 2009 marijuana conviction.

June 1, 2004: Theft, sentenced to 6 months conditional discharge.

May 17, 2005: Vehicular Hijacking, sentenced on April 26, 2010 to 66 months imprisonment. As set forth in the indictment to which he entered a guilty plea, defendant took a 2005 Saturn from a female individual by the use of force or threatening the use of force.

April 13, 2007: Possession of Stolen Motor Vehicle, sentenced on September 14, 2010 to 4 years imprisonment.

October 14, 2008: Possession of Marijuana for Sale, sentenced on January 9, 2009 to 3 years probation which included 132 days imprisonment.

None of defendant's lengthy prison sentences have deterred him from committing crimes. He has committed crimes while on supervised release and while on parole. The instant offense occurred approximately 16 months after he was released from prison for a violent felony. Defendant's failure to take responsibility or concomitantly, his perspective that he was not

9

responsible for the current offense of conviction establishes orientation inability to conform his conduct to that of a law abiding citizen.

Defendant seeks to portray himself to this court as a successful individual with no financial motive to commit the offense. In stark contrast is the June 2012 letter sent by Aretha Beaird to this court which also speaks to defendant's character. Defendant attempted to portray himself to the court as a self-employed barber awash in cash from his various endeavours. However, as Beard reported, he claimed to need cash and in 2012 while she was undergoing chemotherapy he persuaded her to loan him approximately $14,000, which she asked the court to help in returning to her. Dockt# 13. This is the same individual whom defendant used to purchase surveillance equipment he intended to use to commit the robbery, and whose handicap sticker was displayed in his getaway vehicle.

B. **Need For The Sentence To Reflect The Seriousness Of The Offense, Promote Respect For The Law And Provide Just Punishment**

In the federal system, few crimes are as violent as armed bank robbery. Defendant's crimes were extraordinarily serious, and robberies like this can spiral into more dangerous situations in which people get harmed. A bank employee could have a heart attack, police and bystanders could be injured in

10

the course of trying to stop the robbery. Robbery victims who come face-to-face with a robber, are immediately aware of a total loss of control. When a weapon is involved, this loss is even more acute, and these circumstances and the trauma of the events can cause both short-term and long-term adverse effects for the victims. Here, defendant bound, gagged, and repeatedly approached the victims as they were immobilized on the floor of the vault. Each time the defendant approached or when he placed a gun near the bank manager's head, the victims could only expect that the defendant was about to kill them.

### C. To Afford Adequate Deterrence to Criminal Conduct

When we speak of deterrence we look to both specific deterrence – that of deterring the individual defendant, and general deterrence as in deterring the like-minded who might be tempted to do the same. Bank robberies run the spectrum from unarmed note-passers to individuals like the defendant, who not only possess a loaded weapon but use it as well. Bank robbers also appear to fall into two rather distinct categories: the "spur of the moment" robbery in which the robber spends relatively little or no time planning and so does not research the target, wear a disguise, has limited plans for escape; and those like the defendant who chose their target in a calm deliberate

11

manner, and devote considerable planning.   Any sentence imposed in this case needs to be sufficient to both specifically deter this particular defendant as well as those who when considering the risks and rewards of committing such a crime are dissuaded from doing so.

### D. To Protect the Public From Further Crimes Of The Defendant

Defendant's history of criminality, his willingness to engage in violent crime, the increasing violence attendant with his crimes, the failure of less restrictive alternatives to imprisonment as demonstrated by his commission of felonies while on supervised release and parole, and his inability accept responsibility for his acts all speak to the need to protect the public from his future criminal conduct.

Indeed, if nothing else, defendant's efforts to revive and embellish his claim that he was abducted and forced to commit the robbery against his will is simply unreasonable and untrue.   These futile claims do little other than confirm that defendant is unable if not unwilling to abide by the law and not commit further crimes.

Similarly, when placed on supervised release for a narcotics offense, he was unwilling to abide by the terms of the supervised release as he committed another drug offense within months of being placed on release.

12

At the time of the instant offense, defendant was on parole for the carjacking and felony theft offenses. He was on parole approximately 16 months before he committed the charged offense. Clearly, defendant is neither willing nor able to lawfully exist in society, and only a lengthy period of incarceration can protect the public from future crimes.

### E. Need to Avoid Unwarranted Disparities.

Although the Sentencing Guidelines are advisory only, the best way to avoid unwarranted sentencing disparities is to sentence within the guidelines. *See, e.g., United States v. Mykytiuk*, 415 F.3d 606,608 (7th Cir. 2005) ("[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country"); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges themselves were designed to treat similar offenders similarly"). Treating similar offenders similarly "was the main goal of the Sentencing Reform Act" and "[t]he more out-of-range sentences that judges impose. . . the more disparity there will be." *Boscarino*, 437 F.3d at 638. Therefore, the Court should give serious consideration to the advisory Sentencing Guidelines and the range as set forth in the PSIR.

### Conclusion

13

For the foregoing reasons, the United States respectfully requests this Court impose a sentence which includes a term of imprisonment.

Dated: January 17, 2014

                       ZACHARY T. FARDON
                       United States Attorney

By:   _s/ *Patrick J. King, Jr.*_____
                       Patrick J. King, Jr.
                       Assistant United States Attorney
                       219 S. Dearborn
                       Chicago, IL 60604
                       (312) 353-5300