IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
-vs-                               )   Case No. 12 CR 416
                                   )
CHARLES B. ESTELL,                 )   Chicago, Illinois
                                   )   August 5, 2013
                    Defendant.     )   10:30 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GARY FEINERMAN

APPEARANCES:

For the Government:      HON. PATRICK J. FITZGERALD
                         UNITED STATES ATTORNEY
                         BY:  MR. PATRICK J. KING, JR.
                              MS. CAROL A. BELL
                         219 South Dearborn Street, Suite 500,
                         Chicago, Illinois  60604
                         (312)353-5300


For the Defendant:       LAW OFFICE OF GREGORY T. MITCHELL
                         BY:  MR. GREGORY T. MITCHELL
                         18141 Dixie Highway
                         Suite 111
                         Homewood, Illinois  60430
                         (708) 799-9325


Court Reporter:

                 CHARLES R. ZANDI, CSR, RPR, FCRR
                       Official Court Reporter
                    United States District Court
              219 South Dearborn Street, Suite 2128
                     Chicago, Illinois  60604
                   Telephone:  (312) 435-5387
             email:  Charles_zandi@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2           THE CLERK:  12 CR 416, USA versus Estell.

3           MR. KING:  Good morning, your Honor.  Patrick King

4  and Carol Bell on behalf of the United States.

5           THE DEFENDANT:  Good morning, sir.

6           THE COURT:  Good morning.

7           MR. MITCHELL:  Good morning, your Honor.  Gregory

8  Mitchell on behalf of Mr. Charles Estell, Judge, who's present

9  in court.

10          THE COURT:  Okay.  Good morning.  Are we ready to

11 proceed with the pretrial conference?

12          MR. MITCHELL:  Yes, Judge.  I think the government,

13 though, would like -- they superseded on Mr. Estell.

14          THE COURT:  Right.

15          MR. MITCHELL:  So, I think the first thing I guess we

16 have to do is have him arraigned.

17          THE COURT:  Right.  And tell me, what's the marginal

18 difference between the indictment and the superseding

19 indictment?

20          MR. KING:  Count 2 specifies the word "brandished."

21 A change in the law this June, the Supreme Court alleges any

22 element which would increase a statutory minimum penalty ought

23 to be alleged or at least decided by the jury.  And in an

24 abundance of caution, we thought if the jury had to decide it,

25 the superseding indictment ought to say it.  So, instead of,

1  "used and carried the firearm in a crime of violence," it now
2  says, "used, carried, and/or brandished."
3          THE COURT:  Understood.
4          MR. MITCHELL:  Understood, Judge.  The bottom line is
5  that the government could have just offered an instruction,
6  and if the jury specifically with brandishing, then that
7  Guideline would have applied.  But it's fine, Judge.
8          THE COURT:  I think they're just trying to be safe.
9          MR. MITCHELL:  Yes, Judge.  I understand.
10          THE COURT:  Okay.  So, are you ready to proceed with
11  the arraignment on the superseding indictment?
12          MR. MITCHELL:  Yes, Judge.
13          THE COURT:  Okay.  Mr. Mitchell, have you received a
14  copy of the superseding indictment?
15          MR. MITCHELL:  I have, Judge.
16          THE COURT:  And you've reviewed it with Mr. Estell?
17          MR. MITCHELL:  Yes, Judge.
18          THE COURT:  Would you like it read in court?
19          MR. MITCHELL:  No, Judge.  I think with this
20  explanation with respect to Count 2 -- Count 1 is the exact
21  same.  With respect to Count 2, Judge, they just alleged
22  brandishing, as opposed to having --
23          THE COURT:  So, you waive reading?
24          MR. MITCHELL:  That's correct, Judge.
25          THE COURT:  And let me ask the government to advise

1  the defendant of the maximum penalties in this case.

2  MR. KING:  The maximum penalty for Count 1 is
3  25 years' imprisonment.  For Count 2, it's a mandatory minimum
4  seven years consecutive to a maximum of life.  The statutory
5  fines are the same, $250,000 or twice the gross gain or loss
6  to the institution for 1, and $250,000 on 2.  So, it's
7  approximately $750,000 or $500,000, depending on how you --

8  THE COURT:  All right.  And would the defendant like
9  to enter a plea to the superseding indictment?

10  MR. MITCHELL:  He enters a plea of not guilty to
11  Counts 1 and 2, Judge.

12  THE COURT:  All right.  And I'm assuming there are no
13  Rule 16 materials that need to be turned over that haven't
14  already been turned over, is that correct?

15  MR. KING:  No, your Honor.  We're continuing to --
16  yes.  We're all caught up, and we're continuing to even
17  deliver more.

18  THE COURT:  I see.  Is that your understanding,
19  Mr. Mitchell?

20  MR. MITCHELL:  Yes, Judge.  I've got a substantial
21  amount.  I was just advised this morning that there's some
22  additional material probably duplicative of what I've already
23  got; but just to be on the safe side, Judge, I'm going to get
24  it and review it.

25  THE COURT:  All right.  So with that out of the

1  way -- and you're welcome to stand if you'd like; but we're

2  going to be here a little while, so if you'd like to sit down,

3  if some of you would like to sit down or all of you would like

4  to sit down, you can, or you can remain standing, whatever

5  you're more comfortable doing.

6          So, the government provided --

7          MR. MITCHELL:  He's got papers in there.

8          THE COURT:  Okay.  We'll hold on for one moment.

9          Okay.  The government has a proposed statement of the

10  case, which is docket No. 56.  Mr. Mitchell, do you oppose

11  that?

12          MR. MITCHELL:  No objection, Judge, to that.

13          THE COURT:  Okay.  So, the statement of the case will

14  be as proposed by the government.

15          The government submitted a witness list, which is

16  docket No. 54.  Are you definitely planning on calling all of

17  these witnesses, or are some of these folks may-calls?

18          MR. KING:  Judge, we're still trying to work out

19  with -- if we can shorten this and whether there would be any

20  stipulations.  We may need some additional record-keepers.  We

21  may have to bring somebody from the FDIC.  That's the best we

22  can give you right now.  We're going to make an effort to

23  shorten this if we can.

24          THE COURT:  And just for my benefit, can you just

25  briefly describe each of these folks?

1          MR. KING:  Yes, your Honor.  The first individual, I
2     believe, is the girlfriend/fiance of the defendant.  The
3     second is a female acquaintance of the defendant.  The third
4     individual is a bank representative who would authenticate the
5     security video and account for the money from the bank.

6          The third individual is an FBI agent.  The fourth
7     individual is a teller at the bank.  The next individual is an
8     FBI agent.

9          THE COURT:  That's Landau?

10          MR. KING:  Yes, your Honor.  Martinez is a teller at
11     the bank.  Wentz is an FBI agent.  Raschke we expect we'll
12     call.  He's an FBI agent.  And I'm going to address that at
13     the end of our motion today.

14          Hunt is an officer from the Oak Lawn Police
15     Department, as is Hudziak.  The next four individuals are FBI
16     agents.

17          And then we mentioned that there's various
18     record-keepers who the agencies haven't identified yet as
19     to who they're going to send as their record-keeper.

20          THE COURT:  I see.

21          MR. KING:  And the parole officer, we haven't had
22     that person designated yet.

23          THE COURT:  All right.  As soon as you have those
24     names, let me know, because I'll want to read all the names of
25     the potential witnesses to the potential jurors.

1    MR. KING:  Yes, your Honor.

2    THE COURT:  And if -- I'm not going to ask you who

3    your witnesses are going to be because you may not know at

4    this point; but to the extent that you know that you're going

5    to have a witness before trial, if you could let me know just

6    because I don't want some witness to show up and then have

7    people on the jury know that individual and that would cause a

8    problem.

9    MR. MITCHELL:  Understood, your Honor.

10    THE COURT:  Any discussion about these witnesses that

11    we need to have?

12    MR. KING:  Not at this point, your Honor.  I think

13    we're still in the process of discussing them.

14    THE COURT:  All right.

15    MR. MITCHELL:  And I think, Judge, the key is that

16    Mr. King just indicated there's some additional *Jencks*

17    material that I might be getting, so obviously, with respect

18    to prior statements that witnesses may have provided those

19    statements, I have to review those as well.

20    THE COURT:  All right.  Is this going to -- are there

21    going to be any documentary exhibits?

22    MR. MITCHELL:  I know we will have some, Judge.

23    MR. KING:  We haven't finalized our exhibits, but I'm

24    confident there's going to be an FDIC certificate.  There's

25    going to be money, photographs.  When you say documentary, I'm

1    not sure, your Honor.  Like say, for instance, there will

2    probably be a diagram of the bank.

3              THE COURT:  Okay.

4              MR. KING:  We're going to ask you at the end of

5    business today -- it's not really a secret that at one point,

6    we had the motion to have the defendant's cellphones examined

7    with testing.  Those results haven't been done; but at the end

8    of this week, we expect to come and ask you for an order

9    authorizing cell site location so we can see if we can

10   determine where the phones were located.  That may well

11   involve a chart or a map to show where the various locations

12   are.

13             So, for your purposes today, the government would

14   expect to use photographs.  We're not bringing the money in.

15   The weapon, the certificate from the FDIC, assume a map, and

16   assume a diagram of the bank.

17             THE COURT:  And those will be demonstrative exhibits,

18   the maps and the diagrams?

19             MR. KING:  We would expect in advance of trial, as we

20   get closer to it and we hone the issues -- and we're not quite

21   clear on where the defense issues are going to be, which will

22   affect the witnesses and the physical exhibits.  But as we get

23   closer -- well -- I mean, before we go to trial, you'll get a

24   copy of an exhibit list with copies of the exhibits that are

25   copyable, as will the defendant, so that when we're at trial,

1  we won't have to go and exchange exhibits.  It will be marked
2  for everybody to have.

3          THE COURT:  Okay.  That's really what I was -- going
4  to be my next question, which is you two will -- both sides
5  will talk about your various exhibits; and if there are going
6  to be evidentiary issues, you'll let me know?

7          MR. MITCHELL:  Yes, Judge.

8          MR. KING:  Yes.

9          THE COURT:  All right.  And if you do -- I'm hoping
10  that you'll provide the Court with an exhibit book.

11          MR. KING:  Yes, your Honor, with the list, I'll get
12  you a copy of the exhibits.

13          MR. MITCHELL:  Yes.

14          THE COURT:  Very good.  And if it's not -- if it's
15  too much of a burden, then don't worry about it; but if it's
16  not too much of a burden, if you could provide two sets of
17  your exhibit book, just so my clerk can have one as well.

18          MR. MITCHELL:  Can we have an overhead here as well,
19  so we don't have to have the 12 for the jurors, we should just
20  use an overhead?

21          THE COURT:  Yes.  And you know you should talk with
22  Joe Novak about that.

23          MR. KING:  Yours is where?

24          THE COURT:  My -- I don't have a --

25          MR. KING:  Screens.

1    THE COURT:  Yeah, I have screens.  So, there's

2 usually a screen right here, which is big, and then we can

3 have two -- one or two television screens on either side of

4 the jury box.  Sometimes there's just one in the back; and

5 sometimes there's one in the front as well, although we have

6 to position it so that the jurors can see the witness.

7    You may not go through Joe Novak.  You may have your

8 own equipment, is that right?

9    MR. KING:  I think they all have to talk to each

10 other.

11    THE COURT:  Right.  Okay.  So, you all know who to

12 talk to?

13    MR. MITCHELL:  You're going to get it?  We're going

14 to have it here, or no?

15    MR. KING:  I'll talk to them, yes.

16    MR. MITCHELL:  All right.

17    THE COURT:  Okay.  In terms of voir dire questions,

18 the government provided some suggestions.  Is the defendant

19 going to make any suggestions?

20    MR. MITCHELL:  I need to talk with Mr. Estell about

21 that, Judge.  I think we may have one or two, and it's really

22 going to be tied to where the instructions are.

23    THE COURT:  I see.  And let me ask that we have a

24 date certain by which you'll provide those to the Court.

25 When's our trial date?

1    MR. KING:  September 9th, I believe.  Let me just

2  double-check.

3    MR. MITCHELL:  Next Monday, Judge.  That should be

4  fine.

5    THE COURT:  Oh, that's -- I don't need it by next

6  Monday.  So, if you need more time, that's fine.  So,

7  September 9th is the trial date?  Why don't we say by

8  August 30th.

9    MR. MITCHELL:  That works.

10    THE COURT:  If you want to get it in early, that's

11  fine, too.

12    And then jury instruction, I have jury instructions

13  from the government.

14    MR. MITCHELL:  If I can approach, Judge.  I've

15  tendered -- we essentially have one, Judge, and it's a

16  modified instruction for Seventh Circuit Pattern Jury

17  Instruction 6.08, and I've given it to the government already,

18  Judge, discussed it with Mr. Estell.

19    And given the nature of this case, Judge, and the

20  theory of defense, we would ask that that modified instruction

21  be given.

22    THE COURT:  All right.  Does this correspond -- or is

23  this intended to replace an instruction that the government

24  proposed?

25    MR. MITCHELL:  Yes, Judge, and that would be

1  instruction No. 20.

2  THE COURT: And do you have any objection to the

3  government's other instructions?

4  MR. MITCHELL: The only other one that I have an

5  objection to, Judge, is 32. Everything else is pretty

6  standard, Judge. The only -- my objection to 32, Judge, is

7  that the focus on the firearm, there seems to be like three or

8  four different instructions now on the firearm.

9  I mean, we superseded. 27 deals with the brandish

10  term. 26(a) is the gun. 28 is again the use of -- deployment

11  of a firearm. A person carries a firearm. Firearm, No. 30.

12  It's like six different instructions on the firearm. To me,

13  it just seems overkill and a focus, Judge. And I don't think

14  Jury Instruction 32 adds anything about expelling a projectile

15  or anything else. There's no evidence of any shots being

16  fired. There's none of that. So, I just think, Judge, that

17  this is overkill.

18  MR. KING: Your Honor, if I might briefly respond --

19  THE COURT: Sure.

20  MR. KING: It's an element of the offense. We've

21  offered to stipulate that it's a firearm so that the jury is

22  instructed that it's a firearm; but if you look at Government

23  Exhibit 26(a), the jury is instructed that they must find that

24  the defendant knowingly used or carried a firearm during and

25  in relation to the crime. So, unless they know -- and that's

1  why it's a pattern instruction.

2  So, we're offering -- if he feels that there's some

3  undue prejudice about expelling a projectile, we'll offer to

4  stipulate that that element is satisfied, that the Glock 26

5  was a firearm.

6  MR. MITCHELL: We can stipulate to that, Judge.

7  THE COURT: All right.

8  MR. KING: Then we'll prepare a stipulation, and when

9  the final jury instructions come, we can agree to withdraw

10  that, your Honor.

11  THE COURT: Okay. So, the parties will work on a

12  stipulation; and if there's a stipulation, we can strike

13  Government's Proposed Instruction 32.

14  MR. MITCHELL: Yes.

15  THE COURT: As to the Government Proposed Instruction

16  No. 20 and Defendant's Proposed Instruction No. 1, I obviously

17  haven't had a chance to take a look at the defendant's

18  proposed instruction, but what does the government think about

19  it, if you've had a chance to consider it?

20  MR. KING: Just looking at it briefly, your Honor,

21  we're objecting to it. It contains a number of surplusage,

22  repeating other information that's contained in another

23  instruction, such as a defense of coercion, which is actually

24  an inaccurate statement of the law.

25  And although a minor modification, there's a -- when

1    he drops down to paragraph -- subparagraph 1, "seriously kill

2    or injure his son or fiance," we can live with that, and that

3    he didn't commit the offense, which is closer to what the

4    pattern instruction says.  It need not be repeated in

5    section 2.  I don't know whether the son is an infant, isn't

6    an infant, but it's really irrelevant.  The question is the

7    identity of another person.

8         Our instruction was, as his original statement was to

9    us, injure him or his girlfriend.  So, substituting son for

10   himself, that isn't really troubling.

11        But the other stuff is more troubling.  It's

12   irrelevant.  It's surplusage, and in some regards inaccurate.

13             THE COURT:  What other stuff are you talking about?

14             MR. KING:  If you look in paragraph No. 1, after the

15   word "coerced," "bank robbery, he did so because he was

16   coerced."  So, the section beginning, "Like self-defense or

17   duress, coercion is an affirmative defense designed to spare a

18   person from punishment," that sentence, that's surplusage.  It

19   ends at, "robbery."  That was inserted into the pattern.

20             THE COURT:  I see.

21             MR. KING:  The other change to the pattern, as I

22   suggest, is infant and, "the bank robbery, as directed," is

23   not in keeping with the pattern and shouldn't be there.

24        The question that I'm also alerting you to is that --

25   our instruction differs is that the offense of coercion is

1 directed to Counts 1 and 2.  His only is directed to Count 1.

2 THE COURT:  Do you intend it to be directed towards

3 Counts 1 and 2?

4 MR. MITCHELL:  No, just Count 1, Judge.  Again, my

5 concern is this, Judge.  And first, if I can respond to the

6 first part, those cases that I cite, Judge, that language,

7 "like self-defense or duress," is a quotation coming out of

8 the cases that I cite here.  So, with respect to that, that's

9 right out of the cases.

10 THE COURT:  Right.  But just because something -- an

11 Appellate Court says something in a case doesn't make it

12 automatically appropriate for a jury instruction, and the

13 Court of Appeals itself has said that.

14 MR. MITCHELL:  I understand that, Judge.  But given

15 the theory of defense here, the concern is that the

16 government -- that the jury understands with respect to what

17 the standard is.  And this adds the question that if he acted

18 under threats or conditions that a person of ordinary firmness

19 would have been able to resist, or if he reasonably believed

20 that the criminal action was necessary to avoid harm more

21 serious than that sought to be prevented in the bank robbery.

22 In this particular case, that's what the facts point

23 out, that -- the life of his infant son and his fiancee, as

24 opposed to a bank robbery.  And that's exactly the comparison

25 that the coercion defense addresses.

1            And so the pattern instruction doesn't -- doesn't

2 explain it in that regard.  It doesn't talk about the level of

3 how serious he has to understand and what the threat has to be

4 in comparison to what he's doing, because different crimes

5 that are being committed requires a different amount of

6 firmness or commitment over it.  So, this explains it better.

7            And again, Judge, given the nature of the

8 overwhelming evidence that the government has in this case, I

9 mean, completely -- there is no question that's being alleged

10 with respect to Mr. Estell and this bank robbery.  The only

11 question that's before the jury is to why.  And the coercion

12 defense is:  Why we do this?  And this explains it.

13            And I think the cases support that view, and I think

14 the cases are on point that the defendant, if there's a

15 reasonable basis to raise it, has a right to have the jury

16 hear his theory of defense.

17            THE COURT:  All right.  I don't have to make a

18 decision now.  I'll take a look at the -- a closer look at

19 the instruction that the defendant just handed me, and I'll

20 take a look at the pattern, and I'll make a decision

21 probably --

22            MR. KING:  May we also still have an opportunity to

23 look at the cases that are cited here?

24            THE COURT:  Sure.  You can file whatever you'd like.

25 Same with the defendant.  You can file whatever you'd like.

1    MR. MITCHELL:  And in respect to the second question,

2  your Honor, with respect to the other change that was made is

3  that the government put in is that he reasonably feared a

4  person that he did not know, and that's not quite accurate,

5  either, Judge, because it's argument about what he knew.  He

6  knew that the people who threatened him are the same people

7  who kidnapped him, and that's the identity of the people.  So,

8  we substituted that as well.  I don't think the government is

9  arguing in that regard, but that's a change.

10    And then the last issue with respect to, "as

11  directed," Judge, again, that's the -- that's the theory.

12  That's the theory of the case here.  It's one thing to just

13  simply be in fear, but in this case, it's, "directed to commit

14  the bank robbery."  And so that's more accurate and describes

15  what the jury has to decide in this case, as opposed to the

16  open-ended instruction from the -- it's not surplusage.  It's

17  essential, we think.

18    THE COURT:  All right.  I'll take a look at that.

19  Any other jury instruction issue s?

20    MR. MITCHELL:  No, Judge.  I went through everything,

21  and it appears that those are the only ones that are relevant.

22    MR. KING:  I don't see any at the moment, Judge.  I

23  mean, obviously, as we get into trial --

24    THE COURT:  Yes.

25    MR. KING:  -- these may alter somewhat, to the extent

1  that there's facts.  I think this covers it right now.

2          THE COURT:  Great.  In terms of our panel we'll

3  have -- obviously, we'll have 12 jurors and two alternates.

4  The government will get six peremptories.  The defendant will

5  get 10.  And then I think each side gets one extra peremptory

6  per alternate, is that correct?

7          MR. KING:  That's fine, Judge.

8          MR. MITCHELL:  That's fine, Judge.

9          THE COURT:  So, I'm trying to figure out how many

10  jurors, potential jurors I ought to order.

11          MR. MITCHELL:  Just so I understand your practice is

12  you put them in the box, and then you strike, and then the

13  ones that are left are a part of it?  There's no back strikes,

14  correct?

15          THE COURT:  I do -- we do all the strikes at once.

16  So, I'm going to question 1 through 35, 1 through 40, and

17  then -- so, everybody's going to fill out a questionnaire that

18  I'm going to -- that they'll get either the Friday before or

19  the Monday morning of, depending upon what part of the

20  two-week period the trial starts.  I should actually tell you

21  that right now.

22          Yeah, it's going to have to be Monday morning.  So,

23  they'll fill out the questionnaires.  Jackie will make copies

24  for both sides as soon as they're available.  And I'll ask --

25  we're going to get everybody in the courtroom, all the

1  potential jurors in the courtroom at once.  Some will be in

2  the box.  Some will be on the benches.  And we're just going

3  to go straight through, and I'm going to ask everybody

4  questions.  Even if I have nothing to ask them about, I'll

5  just try and engage them in conversation about something just

6  so you can get some sense of the potential juror.

7        And then I'll excuse everybody.  And then you'll tell

8  me whether you want me to ask follow-up questions of any of

9  the potential jurors.  And then that will happen.  Then I'll

10  excuse everybody again, and it may be that we only need to

11  bring in one or two of the potential jurors for follow-up

12  questions.

13        And then we'll do -- we'll discuss whether anybody

14  ought to be excused on hardship grounds.  And then we'll do

15  motions to strike for cause.  And then we'll do peremptories.

16  And then the first 12 on the list will be our jurors, and then

17  the next two will be our alternates.

18        I don't know if that answers your question about back

19  strikes.

20        MR. KING:  So, it will be in the order in which you

21  call them?

22        THE COURT:  Yes.

23        MR. KING:  Okay.  And we'll have that order ahead of

24  time?

25        THE COURT:  Yes.  And so if you want to -- I guess by

1   back strike -- I'm not sure I know what you mean by back

2   strikes, but you could strike -- use your peremptory on

3   No. 35, and then you could use your peremptory on No. 17 after

4   that.

5           MR. KING:  I think what he's referring to is when

6   they seated juries in groups of four --

7           THE COURT:  Right, no.  We're not going to do that.

8           MR. KING:  But that's not the procedure here.

9           MR. MITCHELL:  You're going to do all 48 at one time?

10          THE COURT:  Hopefully all 40, but that's my next

11  question, which is:  Given the procedure, how many potential

12  jurors do you suggest that we order?  My presumption is 40,

13  but let me know if you think we ought to go higher or lower.

14          MR. KING:  I don't see any reason to go higher,

15  Judge.  Basically, you're talking about 16 peremptory strikes,

16  then you have hardship.  Of course, you can't really tell

17  during the summer what anyone's going to do.  I think 40's a

18  safe number.

19          THE COURT:  Mr. Mitchell?

20          MR. MITCHELL:  My concern is that there are multiple

21  law enforcement agencies that are involved, that we may need

22  some extra because there may be jurors who may know -- because

23  we've got Oak Lawn, we've got FBI.

24          THE COURT:  The FBI and Oak Lawn.  If it were City of

25  Chicago, there may be an issue, probably not.

1  MR. MITCHELL:  We can start with 40, Judge.  I just
2  don't know.

3  MR. KING:  I can't -- I don't recall the last time
4  I've actually tried a bank robbery to give you an answer, but
5  I think it's a good starting number.

6  THE COURT:  Okay.  Why don't we go with 40.  We'll
7  get to the motions *in limine* in a minute.

8  But we'll start -- let me take a look at my calendar
9  here.  We'll start Monday morning, let's plan on -- you all
10  should plan on being here by about 9:15, and we'll hopefully
11  get started by about 9:45.  Hopefully that's when we'll have
12  the copies of the written questionnaires.  But we may have
13  some stuff to discuss beforehand, so if you could be here by
14  9:15 on Monday morning.  Then during the week, you're
15  planning -- how many days do you think the trial will last?

16  MR. KING:  I think three.  Once again, Judge, I guess
17  it depends on how the defense unfolds.  That's from our
18  perspective evolving somewhat and whether we want to preempt
19  that.

20  THE COURT:  No more than a week?

21  MR. KING:  In any event, I don't see this going
22  beyond a week, no matter what happens.

23  THE COURT:  That's fine.  And each day, we'll start
24  around 9:30 or 9:45, depending on how my morning call looks.

25  We'll have one break in the morning, one break in the

1  afternoon, and then of course, a lunch break during the middle
2  of the day.

3        I like to keep going until somewhere between 4:30 and
4  5:00 o'clock, unless we have a juror from Ottawa or something
5  who needs to catch a particular train.

6        And you'll -- each side will let the other side know
7  what witnesses that side intends to call the following day.
8  Is that acceptable?

9        MR. KING:  That's fine.

10       MR. MITCHELL:  That's fine, Judge.

11       THE COURT:  All right.  Anything else about the trial
12  procedure?

13       MR. KING:  If I might, how long do you anticipate
14  jury selection usually takes and whether we should have a
15  witness waiting, or how long -- I don't want an unusual gap,
16  but sometimes jury selection takes where at most we do an
17  opening statement plus the jury selection and then the next
18  day start promptly with the proofs and roll through, or do you
19  have a sense of how you'd like to do this --

20       THE COURT:  I would have your first witness ready to
21  go in kind of mid to late afternoon.  I tend to be -- or at
22  least I think that I'm pretty efficient in terms of picking a
23  jury, so hopefully we'll be done if not by lunch, then shortly
24  after lunch, maybe 2:00 o'clock, and then you can do your
25  openings.  And it really -- as to whether we get into the

1  testimony that first day, it will really depend on whether --

2  how efficient we are on jury selection, how long the opening

3  statements take, and who your first witness is.  If it's

4  somebody who's a quick witness, that will be one thing.  If

5  it's somebody who's going to carry over, we might want to hold

6  off until Tuesday.  It really depends.

7           MR. KING:  With respect to the elevators, would the

8  witnesses use the one side and then the jurors use the other

9  side to keep them --

10          THE COURT:  Yeah.  I'd like to have the jurors use

11  the south elevator, and everybody else should use the north

12  elevator.

13          MR. KING:  I'm trying to think.  There's something

14  else.  Generally just for scheduling purposes for ours, your

15  lunch break tends to be a certain duration at a certain time,

16  or is it --

17          THE CLERK:  Between noon -- let me say between 11:45

18  and 12:30 we'd start, and then I usually give an hour on the

19  short side, an hour 15 on the long side.

20          MR. MITCHELL:  And just a standard motion, Judge, to

21  exclude the witnesses from the courtroom.

22          MR. KING:  That would be fine, Judge.  We have no

23  objection, other than the fact that the case agent may

24  ultimately testify, and we'd expect that he'd be able to --

25          THE COURT:  How many case agents do you plan on

1  having?

2  MR. KING:  Just one.

3  MR. MITCHELL:  Yeah, the one case agent, I guess,

4  would be at the table.  Obviously, Judge, that's fine.

5  THE COURT:  Okay.

6  MR. KING:  I can't think of anything else as to

7  procedure.

8  THE COURT:  All right.  So, let's go to the motions

9  *in limine*.

10  Mr. Mitchell, I know you filed your oppositions this

11  morning, and I've had a chance to take a look, a brief look at

12  your brief.

13  Now, with respect to motion *in limine* No. 1, can you

14  tell me what the issue is?  I'm not sure I understand what

15  practical dispute the parties have over these statements.

16  MR. KING:  I think in part, I'm alerting the Court to

17  the fact that the defendant made three separate statements.

18  THE COURT:  Right.

19  MR. KING:  The first statement just stands alone.

20  The second two statements were given under proffer protection.

21  THE COURT:  Right.

22  MR. KING:  So, the government has agreed --

23  THE COURT:  According to you.  The defendant says

24  that the third statement was not given under proffer

25  protection.

1          MR. KING:  Well, that's in factual dispute, and maybe

2   that's something that needs to be addressed.  But if you

3   assume from our standpoint for a moment that the second two

4   statements are -- we're contractually precluded from offering

5   evidence or alluding to them during our case in chief; and if

6   the defendant chooses to testify and if he presents a position

7   inconsistent with it, then we may seek to offer one or both of

8   them.

9          And we're suggesting to the Court that the two

10  statements that from our view are proffer-protected are

11  inconsistent as they exist.  So, no matter which one he

12  chooses, he's triggering these protected statements into

13  evidence.

14         So, if we can't bring them before the jury, but the

15  defendant were to somehow suggest that our failure to do so

16  somehow was concealing evidence or working to his

17  disadvantage, that would put us in an unfavorable position.

18  That would be unfair and inaccurate.

19         So, we want to preclude evidence or arguments

20  regarding those or the inadmissibility -- and if, say, for

21  instance, they are triggered during the course of the trial,

22  then I think the government would be entitled to a limiting

23  instruction, so that the jury could be advised that defendant

24  wasn't able to adduce these -- or the government wasn't able

25  to offer these statements prior to this point, for reasons you

1  need not concern yourself with.

2  THE COURT:  Okay.  Let's talk about the third

3  statement and whether it was a -- let's assume with you that

4  it was a proffer statement.  You're saying that you have a

5  contractual prohibition against introducing that statement

6  during your case in chief.

7  It seems that the defendant is waiving its rights

8  under that contract.  So, can you still maintain that the

9  third statement is something that is off-limits during your

10  case in chief?

11  Well first of all, am I right, Mr. Mitchell, that

12  even assuming, contrary to what you say, that it was a proffer

13  statement, are you entitled to relinquish your rights under

14  that contract and say the government can use statement No. 3

15  during trial?

16  MR. MITCHELL:  Again, Judge, two responses.  One, I

17  think the fact that he made -- if the government's position is

18  that this is a proffer, I think that sort of ends it, because

19  it's not inconsistent with the proffer.  He can raise it.

20  But the second issue is that we're not going to be

21  objecting to them raising this issue at all, whether they

22  decided to -- the concern I have is this:  The government has

23  taken three statements from Mr. Estell, and they're choosing

24  which one they believe is the most accurate.  What I'm saying

25  is that clearly, if you look at all three statements, that's

1  not quite accurate, either.

2  So, we are not telling the government that they're

3  off-limits strategically in how they present their case

4  because their hands are tied because of the proffer

5  protections.

6  THE COURT:  Well, you're saying their hands are tied

7  with respect to No. 2.

8  MR. MITCHELL:  I don't know if it's tied with No. 2,

9  either, because statement No. 3 directly references statement

10  2.  And so he -- he references that as part of his third

11  statement.

12  So, I would argue that none of it is protected if,

13  in fact, 3 is allowed to be admitted and used in the case in

14  chief.

15  THE COURT:  What's stopping -- I don't know what your

16  positions are.  Okay?  I have to know what your positions are,

17  and then I have to figure out:  Is there even an issue for us

18  to discuss once I know what your issues are?

19  You're saying that you cannot introduce 2 and 3

20  because if you did, it would violate the contract that you

21  have with the defendant, is that correct?

22  MR. KING:  That is correct.

23  THE COURT:  Okay.  He's saying that there is no such

24  contract, or he's saying if there is a contract, he's

25  releasing you from your obligation under the contract.

1    MR. KING: I think that was your question. I didn't
2  think that was the answer.

3         THE COURT: Okay.

4         MR. KING: If he says, "We have no objection and we
5  fully intend to have that as part of our defense," that may
6  resolve the issue.

7         THE COURT: No, it's not about he's using it as part
8  of his defense.

9         MR. KING: No, but --

10        THE COURT: In terms of you using it in your case in
11  chief.

12        Mr. Mitchell, does the defendant object to the
13  government's using statements 2 and 3 as part of its case in
14  chief?

15        MR. MITCHELL: No, Judge.

16        THE COURT: Okay. Where does that leave you with
17  respect to this motion *in limine*?

18        MR. KING: I believe it may make it moot, your Honor.
19  I'd like to -- just because the law on proffer is something
20  which we take very carefully, I'd just like to double-check
21  and make sure that that wouldn't run afoul of any of our
22  policies. But that may well moot it, but I'd like to check
23  and just do a little research with the office to make sure.

24        THE COURT: Okay. So, what do I have to -- is there
25  anything I need to decide on motion *in limine* No. 1?

1          MR. MITCHELL:  I don't think so, Judge.  And just so
2   the record is clear, proffer -- the first proffer statement in
3   June basically says that if a defendant takes a position
4   inconsistent with that statement, the government can use it.
5          THE COURT:  Right.
6          MR. MITCHELL:  My understanding is that the
7   government's position is statement 3 is inconsistent with
8   statement 2.  That's a defense that he can use statement 2.
9   We have no objection to 3.  That's what we're offering, so I
10  think -- we're not objecting, Judge, so I don't think that the
11  proffer issue -- I think it is moot.
12         THE COURT:  You're not arguing that the government
13  has to use 2 and 3.  You're just saying that you have no
14  objection to the government using 2 and 3.
15         MR. MITCHELL:  Yes.  And we object to any instruction
16  by the Court if they tactically decide to want to focus on 1
17  to say, "Well, we really couldn't use 2 and 3, and we want the
18  jury to know why we didn't raise it in the first place."
19         MR. KING:  I think he's crystallized the issue, and
20  if I might just have -- I can respond at the same time, the
21  August 30th, that he's filing his voir dire questions.  I'll
22  advise the Court, I don't believe -- I believe that will
23  resolve it, but I'd like the opportunity to just make sure
24  that there is no other legal issue that I'm not focusing on at
25  the moment.

1          THE COURT:  Okay.  And you want to file something --

2   if motion *in limine* No. 1 is still alive, you'll file

3   something by August 30th?

4          MR. KING:  Yes, your Honor.

5          THE COURT:  Okay.  Is that okay with you?

6          MR. MITCHELL:  That's fine.  That's why I wanted to

7   get it, Judge, so that if he wanted to make a reply, he could,

8   and we'd --

9          THE COURT:  Okay.  All right.

10         No. 2, motion *in limine* No. 2 has to do with the

11  prior convictions.  And there's a vehicular hijacking in April

12  of 2010 and possession of a stolen vehicle in April of 2010.

13  Was that the same transaction?

14         MR. KING:  No, it is not, your Honor.

15         MR. MITCHELL:  And there was a conviction on those

16  charges, is that right?

17         MR. KING:  Yes, your Honor.

18         MR. MITCHELL:  Yes, your Honor.

19         THE COURT:  Circuit Court of Cook County?

20         MR. KING:  Yes, your Honor.

21         MR. MITCHELL:  I believe that's where they are,

22  Judge.  I don't have the documents in front of me.

23         MR. KING:  Yes, your Honor.

24         THE COURT:  And there was a sentence, and that

25  sentence has been served?

1      MR. MITCHELL:  That's correct, Judge.

2      MR. KING:  Well --

3      THE COURT:  Well, maybe he was still on parole.

4      MR. KING:  He was still on parole with respect to the

5  hijacking.

6      THE COURT:  I see.  Mr. Estell is shaking his head,

7  but it doesn't really matter because --

8      MR. KING:  I believe he thinks that it's expired, but

9  when he gets arrested on the federal charges, they revoke or

10  stay what's the term on parole.  So, I think -- in any event,

11  he was on parole at the time of the crime.

12      THE COURT:  Are there any revocation proceedings in

13  state court?

14      MR. MITCHELL:  None pending at this time, Judge.

15      THE COURT:  All right.  And then the controlled

16  substance offense was from November of '95, and Mr. Estell was

17  released in 2003, and then apparently, there was some parole

18  or supervised release -- or was that a federal crime or state

19  crime?

20      MR. KING:  That's a federal crime, your Honor.

21      THE COURT:  Okay.  And the supervised release was

22  revoked in April of 2009, and he was sentenced to 24 months.

23  Was that concurrent with the time served for the state court

24  convictions?

25      MR. MITCHELL:  Yes, it was, Judge.

1          MR. KING:  I don't know that.

2          THE COURT:  Okay.  They're saying yes.  I'm not sure
3     it matters.

4          And what court in what district was the controlled
5     substance conviction entered?

6          MR. KING:  It was in the District of Missouri.  I'm
7     not sure which division.

8          MR. MITCHELL:  It was in Missouri, Judge, I think
9     Eastern.

10         THE COURT:  St. Louis or Kansas City?

11         THE DEFENDANT:  Springfield, Missouri.

12         THE COURT:  Oh, that's in the middle of the state.

13         MR. KING:  I would assume Western District.

14         THE COURT:  Okay.  And we have argument -- or I guess
15    the parties dispute as to whether these convictions ought to
16    come in for impeachment purposes under Rule 609(a)(1), is that
17    correct?

18         MR. MITCHELL:  That's correct, Judge.

19         MR. KING:  That's correct.

20         THE COURT:  And I just received, as I mentioned,
21    Mr. Mitchell's response brief, so I'm not going to make a
22    ruling right now, because I want to consider the cases that
23    he has cited; but does either side have anything to say,
24    anything additional to say on the prior conviction issue?

25         MR. MITCHELL:  No, Judge.  I think it's clear.

1  MR. KING: May I have just a moment?

2  THE COURT: I didn't mean to put you on the spot,

3  Mr. King.

4  MR. KING: No, your Honor. I quickly just jotted

5  down something this morning. We haven't had a chance to fully

6  examine it; but I noticed that the notion of what constitutes

7  coercion, it admits immediately, that the threat's immediate.

8  There's -- I think he's drawing a distinction between

9  his sincerity and his credibility. Credibility is an issue,

10  particularly where he's the one describing how immediate the

11  threat is and that it was a viable threat. There's also --

12  and really, it is the lynchpin here is his credibility,

13  because he must establish by evidence that the threatened harm

14  was present, immediate, or impending.

15  There's also a reference that there's other incidents

16  endangering the defendant. And I don't know that -- it's

17  alluded to here, and maybe we just need to address it

18  elsewhere. But as long as you're looking at his motion

19  *in limine* on page 7, six lines up from the bottom, there's a

20  reference that the defendant may testify to other incidents

21  endangering the defendant. I think that's something we should

22  somewhere today discuss as to --

23  THE COURT: What are you referring to?

24  MR. KING: Page 7, I think I said six lines up from

25  the bottom, provide context for undisputed evidence of real

1  threats and other incidents endangering the defendant.  I

2  don't think we want to end up at trial trying to figure out

3  what those might be, the relevance of those, or any particular

4  403 rulings.  I think that's probably something we should

5  flesh out ahead of time.

6          THE COURT:  What page are you --

7          MR. KING:  Page -- my copy says page 7.  His --

8  another version says page 6.  I'm sorry, your Honor.

9          MR. MITCHELL:  Which one?

10         MR. KING:  I'm looking at Document 158.  You're

11  looking at 163, your Honor?

12         THE COURT:  I see.  I have docket No. 61, and it

13  looks to be on page 6, four lines from the bottom.  "Solicited

14  to provide context for the undisputed evidence of real threats

15  and other incidents endangering the defendant."  And what's

16  your argument?

17         MR. KING:  I'm just alerting the Court that that's

18  tucked in here.  I don't know what those other things are.

19  That may well be something, and I believe that probably is

20  something we should join issue on before trial because I don't

21  know what these other issues are, what the 403 probative value

22  of these would be or admissibility.  And I think -- it

23  directly attack -- answer the 609 question, but it suggests

24  that there's yet other issues to be addressed.

25         MR. MITCHELL:  If I can reply, Judge, that was the

1  reason why I attached the fifth statement, and page 5 of the

2  fifth statement basically talks about specifically past

3  problems he had in 2007 riding his motorcycle, chased by

4  unknown persons.  He was run off the road.  He remained in a

5  hospital paralyzed.  There's records.

6         And then with respect to Tinka being chased and run

7  off the road and being threatened as well, those were

8  indicated to the government that -- back in December, that

9  there was a pattern of individuals that on repeated occasions

10 had threatened Mr. Estell, and he was trying to identify who

11 those persons were likely and what they were -- regard.

12        So, again, this was not sort of an isolated incident.

13 What Mr. Estell attempted to do, I think -- and again, I

14 wasn't the counsel at the time at the beginning, but I talked

15 to him, is to lay out why these things are continuing even

16 while he's at the MCC.

17        So, the government is aware of this pattern, and

18 they're aware of the arrest.  They're aware of the hospital

19 stay.  They're -- he's been provided copies of letters and

20 threats that were given to the MCC, phone calls and the like.

21        So, it's not simply one.  It's a pattern, Judge.

22        THE COURT:  So, you're saying these prior incidents

23 buttress his defense that he had been kidnapped and forced

24 into this bank robbery?

25        MR. MITCHELL:  Yes.  Because the government's

1  position -- and I don't want to speak for Mr. King -- is that

2  that's just fabricated.  That's just -- he's making it up as

3  he goes.

4         And what Mr. Estell did in December was point out

5  that his life has been threatened and he has been in harm's

6  way because of the relationship and things that he's done that

7  he's not proud of for a period of time that has threatened him

8  and his fiance.  And it's been this series.

9         So, it's not that this is sort of just plucked out of

10  the air.  This is an ongoing pattern, and it continued all the

11  way through at the MCC, which is what prompted this statement

12  on December 12th in the first instance.  It wasn't something

13  that he called over and said, "I want to talk to you about

14  these things."  There were additional follow-up incidents that

15  caused this final third statement to come to pass.

16         MR. KING:  I think -- I think this points out the

17  issue.  If he's talking about seeking to offer evidence of a

18  motorcycle accident eight years before the crime, that's

19  something which is perhaps something that it's going to --

20  we're going to object to under 403.

21         I mean, there may -- maybe we will, maybe we won't,

22  but there's something that needs -- there may be evidentiary

23  issues, I'm pointing out to the Court.

24         THE COURT:  I see.

25         MR. KING:  He's pointing out an eight-year-old

1  traffic accident.  He's suggesting that events which occurred

2  after the crime -- so he's arrested in June.  In November, a

3  letter arrives, and he -- which purports to threaten him or

4  reaffirm his participation with another.  A statement after

5  the fact he may be seeking to introduce to prove something

6  which occurred six months earlier, and there may be some

7  evidentiary problems with that.

8        THE COURT:  Right.  I understand what you're saying.

9  I understand what you're saying.  You're saying if these

10  things are -- have no conceivable -- the other incidents have

11  no conceivable relationship with the alleged kidnapping in

12  June, then they're not admissible.

13        What Mr. Mitchell is saying is that it's all part of

14  the same -- same threat complex that Mr. Estell has been

15  subjected to.

16        MR. KING:  Yes.  And I'm suggesting that if he --

17  perhaps if he lays it out, the Court is in a better position

18  to make -- have time to make a ruling in terms of balancing --

19  or maybe the Court can't until the evidence is produced, but

20  I'm just suggesting that there's going to be some interesting

21  legal issues, evidentiary issues as to whether an event eight

22  years before the event is relevant to an immediate threat in

23  2012, or whether a statement, a hearsay statement by an

24  unknown party six months after the event is admissible.

25        THE COURT:  Well, a threat isn't hearsay.  A threat's

1  a verbal act.

2  But with respect to the 2007 incident, are you saying
3  that these are the same folks who were involved in the
4  kidnapping?

5  MR. MITCHELL:  Judge, I think, as I point out in my
6  response, if the government is going to be attacking, which
7  I'm sure they are, Mr. Estell's credibility and that's why the
8  prior convictions from 1995 and everything else is coming up
9  and saying he's this bad person that shouldn't be believed,
10  he's got convictions and the like, the bottom line, if he
11  described the threats and who he suspected might be the
12  individuals who are providing the threats and why he believed
13  it was immediate and sincere and real and he laid out clearly
14  truthful information concerning prior injuries and threats and
15  injuries he suffered for similar-type folks and that this
16  could be tied, I think that is directly relevant to his
17  credibility.

18  It sounds as if the government is picking and
19  choosing those things that are clearly corroborated
20  independent of Mr. Estell's testimony are not admissible, and
21  the things that he's testifying to are admissible, but we are
22  going to challenge his credibility based on some prior
23  convictions.

24  I would just think, Judge, that given the government
25  has had this statement since December, that the jury should be

1  allowed to hear the whole completeness of the statement as

2  given if the government's going to allege that it's not true;

3  and those individual specific things that he identifies are

4  clearly essential to the whole completeness of the statement.

5  THE COURT:  What do you mean by the statement?  Do

6  you mean the written statement, or do you mean that

7  Mr. Estell's going to testify consistent with the

8  December 12th statement?  Because if you're saying the written

9  statement, I'd like to know how it is going to come in.

10  MR. MITCHELL:  No, no, not the written statement

11  itself, but the question as to what he said on December 12th

12  to the government in respect to his participation in the bank

13  robbery; and those statements that were made, for

14  completeness, if they're going to challenge the credibility,

15  that statement needs to be there, Judge, all of them.

16  THE COURT:  I don't know what you're -- I have no

17  idea what you're saying.  I don't even understand the argument

18  you're trying to make.

19  What is it that you want to do that you think that

20  I'm not going to let you do or that you think the government's

21  going to object to you doing?

22  MR. MITCHELL:  The government, if I understand

23  Mr. King -- and he can explain it -- will be objecting to

24  particular statements made --

25  THE COURT:  Please don't say statement.  Because when

1  you say statement, I'm thinking about this written statement.

2  Are you talking about testimony from Mr. Estell --

3  MR. MITCHELL:  Yes, Judge.

4  THE COURT:  -- or are you talking about something

5  that's going to come in through some document?

6  MR. MITCHELL:  It may come in through Mr. Estell or

7  from the agents who are investigating the threats.

8  THE COURT:  Okay.  Okay.  So, you're going to -- you

9  would like to introduce evidence regarding this 2007 incident?

10  MR. MITCHELL:  Yes, Judge.

11  THE COURT:  Okay.  And you would also like to

12  introduce evidence regarding the November -- what you're

13  calling the November 2012 threat?

14  MR. MITCHELL:  That is correct, Judge.

15  THE COURT:  And the government's going to object to

16  that on relevance grounds, perhaps, is that right?

17  MR. KING:  Yes, your Honor.  It depends how it comes

18  out and if it's tied up.  That's why we're suggesting if he

19  lays it out, we can all be in a better position to --

20  THE COURT:  And what Mr. Mitchell is saying is while

21  he's not going to try and introduce this written statement

22  perhaps, the background is laid out -- you -- everything you

23  need to know is in the written statement, and that's what the

24  evidence is going to be, is that right, Mr. Mitchell?

25  MR. MITCHELL:  That's correct, Judge.

1     THE COURT:  Okay.  So, given that understanding,
2  Mr. King, do you have any thoughts?
3     MR. KING:  My thoughts are, your Honor, the
4  references to being chased by unknown people in 2007 --
5     THE COURT:  Right.
6     MR. KING:  -- years beforehand, that will not likely
7  meet the 403 balancing test for relevance without more.
8     THE COURT:  Okay.
9     MR. KING:  If that's -- but if he's got more in mind,
10 then we can re-evaluate the position.
11     I'm most concerned that there's other events which we
12 have not yet heard about.  This accident in 2007 and the
13 crimes in '12, we understand.
14     THE COURT:  Okay.  Is there anything else -- any
15 other evidence --
16   (Discussion had between the defendant and counsel.)
17     MR. MITCHELL:  Judge, I understand what Mr. King
18 wants, and what we'll do, Judge, is we'll lay everything out
19 as we can.  I believe it's all in that statement in
20 December 12, but again, I wasn't there, and I want to make
21 sure that I don't shortchange Mr. Estell's story and
22 essentially what he provided the information.
23     So, I will tender a more complete, more detailed --
24     THE COURT:  Okay.  And maybe I have to -- maybe there
25 has to be a proffer outside the presence of the jury --

1    MR. MITCHELL:  I understand, Judge.

2    THE COURT:  -- that will allow me to make a 403

3    evaluation of both the 2007 motorcycle incident and the

4    November 2012 threat incident.

5    MR. MITCHELL:  Yes, Judge.

6    THE COURT:  And one of the things I'll be looking at

7    are:  Who are the folks that were involved in each incident?

8    What's their connection to the alleged coercion and the

9    alleged kidnapping?  That's one of the things I'll be looking

10   at.

11   MR. MITCHELL:  Yes, Judge.

12   THE COURT:  So, I don't think we -- I don't think I

13   want to, and I don't even think I can make a decision on this

14   right now.  But maybe the way we do it is before -- if

15   Mr. Estell is going to testify, is to have something outside

16   the presence of the jury that will allow me to make the proper

17   evidentiary determination.

18   Is there any other way in which you're going to try

19   and get this evidence, evidence regarding the 2007 incident

20   and the November 2012 threat, into evidence?

21   MR. MITCHELL:  It's probably with the other

22   individuals involved, Judge.  I mean, there's police officers

23   that did the investigation.  There's reports that were

24   prepared.  Those are some of the documents that we have.

25   And also, I think Miss Tinka Randall was actually

1  involved and provided one of the reports.  She's listed as one
2  of the government's witnesses.

3        THE COURT:  Okay.  Is there going to be any objection
4  from the government to the defendant introducing evidence
5  regarding the 2007 and the November 2012 matters in the way in
6  which Mr. Mitchell said he's going to introduce them?

7        MR. KING:  I can't tell you in a vacuum.  I haven't
8  seen it.  We don't know where the accident took place, who --
9  what jurisdiction, what happened.  We don't have reports that
10 he's described.  So, I can't really tell you.

11        I think just offering a report would be hearsay, and
12 we'd object to that.  If he has another person describing it,
13 I mean, I'm not trying to preclude him from something, but I
14 want to make sure that there's something I can get my arms
15 around, look at it and evaluate it and make an intelligent
16 decision before I make an objection.  I have nothing to
17 substantiate this.

18        If you look at the attachment that he has, "I am run
19 off the road by people I don't know.  I don't know if it has
20 any connection.  I am speculating this and maybe another
21 incident is tied to this robbery."

22        The details make a difference.  I think if he makes
23 some type of evidentiary proffer or shows us, provides us with
24 the reports that he wants to do, if we can reasonably do
25 things, then we can make a decision.

1    THE COURT:  Okay.  And the only reason I ask you, I

2    just want to know:  Is there going to be an evidentiary

3    dispute?  If so, when is it going to arise?  And given that,

4    what's the best way to deal with it?

5    So, why don't we do it this way:  If there comes a

6    point during the trial, Mr. Mitchell, where you're going to

7    try to introduce this evidence regarding what we've been

8    calling the other incidents, let the Court know and let

9    Mr. King know; and then we'll figure out whether I need to

10   take a proffer outside the presence of the jury.

11   MR. MITCHELL:  Yes, Judge.

12   THE COURT:  And I'll get you a ruling probably before

13   trial on the 609(a) issue.

14   The defendant's not objecting to motion *in limine*

15   No. 3, 4, and 6, so those are granted.

16   No. 5, arguments about missing witnesses, what's your

17   position, Mr. Mitchell?

18   MR. MITCHELL:  Judge, as I read the government's

19   motion -- and I had to read it two or three times.  I really

20   wasn't sure that I understood where they -- what they wanted

21   to prohibit, which is basically any argument that any relevant

22   inference can be drawn from the fact that additional witnesses

23   did not testify, to include any unidentified individuals.

24   One of the critical questions here, Judge, with

25   respect to credibility -- and I understand Mr. King's

1  position.  He took the statement on December 12th.  He did an

2  evaluation with respect to whether it was credible or not.

3  And action or inaction was taken based on what he believed was

4  appropriate.

5  The fact that Mr. Estell was in the MCC in custody at

6  the time and provided this information and whether or not

7  there was any investigation to corroborate or to investigate,

8  given the detailed information that he was provided, I think

9  is relevant, Judge.  And I don't know if Mr. King wants

10 prohibit me from even arguing to the jury with respect to the

11 credibility of Mr. Estell that he's given all of this

12 information, and somehow because there's no one who followed

13 through, that that's something that can't be inferred or

14 argued to the jury, that it's somehow Mr. Estell's fault that

15 the government did nothing with the information that they

16 received.

17 THE COURT:  Mr. King?

18 MR. KING:  The missing witness is traditionally a

19 witness which is in the province of one individual or that

20 you'd expect would testify and then he's not called, and you

21 don't want the jury thinking that there's something wrong

22 about that.  It's compounded when one side infers that that

23 witness should have been called, and the fact that they

24 didn't, that constitutes doubt.

25 This is -- in this situation, the defendant says,

1  "Individuals whom I don't know did this."  It would be

2  hard-pressed to say that individuals whom we don't know, the

3  government should have gotten in.

4         At one point, he falsely implicates a teller.  Later,

5  he says, "Well, the teller really isn't involved."

6         At another point, he says, "Well, you know, there's a

7  big gang member who's in prison somewhere.  He didn't really

8  like me.  Maybe it's him.  Maybe it's not."

9         I don't know that the Court should be in a position

10  of trotting in every gang member or every other criminal that

11  he had a fight with that could possibly be but is not.  He's

12  setting up straw men, and I think it's an inappropriate

13  argument to be suggesting at some point that -- and the

14  document that he attached to it, he doesn't know.  He claims

15  he doesn't know who did this.

16         THE COURT:  Okay.  Who's the missing witness?

17         MR. MITCHELL:  Again, Judge, I'm not -- I think from

18  their motion *in limine* that they're not trying to prohibit me

19  from saying that the government should have called Mr. X or

20  Mr. B, and that's not going to be the argument.  The question

21  is that the government's going to argue that this can't be

22  believed because none of this is true; but yet at the same

23  time, they want to prohibit me from saying, "Well, what did

24  you do to investigate it?"

25         THE COURT:  Okay.  Are you trying to stop him from

1  saying that?

2       MR. KING:  No, but I will now.  That was not a

3  response to -- I think the argument has mutated --

4       THE COURT:  And the reason I ask you is I want to

5  know whether there's an actual disagreement.

6       MR. KING:  I think there is now.

7       THE COURT:  Okay.

8       MR. KING:  It isn't as to -- I believe he's

9  suggesting that there is no -- he will not argue that the

10 government should have called any specific person, because

11 there is no identifiable person.  So, the missing witness sort

12 of is covered.

13      But I think what he wants to now argue is, which

14 brings a new issue, is the government's -- there's something

15 wrong with the government's investigation; and, therefore,

16 that brings reasonable doubt.  And there's case law on that,

17 and I can respond to that as well.

18      But deficiencies in the government investigation is

19 not a proper -- it's in the nature of jury nullification.  "If

20 you don't like the way the government did this, then that's a

21 problem."

22      THE COURT:  Okay.  It sounds like we -- you disagree

23 with that, but it sounds like we have a different issue than

24 the issue that was articulated in motion *in limine* No. 5.

25      MR. MITCHELL:  That's why I said I was confused,

1   Judge, as to what it is.  There's evidence that I've been able
2   to see, and I think Mr. King -- and I don't know why this
3   isn't the case at all.  But there was one police report that
4   indicates that a person called in because either they got a
5   text or a phone call from an unknown person talking about a
6   bank robbery around the time that the bank robbery was
7   occurring, and the number was not related at all to Mr. Estell
8   or anyone else.  And somebody reported it to the police
9   because it seemed very strange that someone either missed out
10  a number in reporting something or whatever else.

11          There's also indications that people observed cars
12  leaving the area of the bank around that period of time of the
13  bank robbery, but there's no follow-up with that
14  investigation, either.

15          I mean, I've got these reports, and the concern I
16  have, Judge, is this:  To be completely open, it was clear in
17  statement No. 1, when Mr. Estell was questioned by the
18  Oak Lawn Police Department, 11, 12 hours after he was arrested
19  and he was questioned there, that they suspected that there
20  were accomplices, one or more, no question about that.  They
21  didn't believe that he -- taking the wrap for himself was
22  credible.

23          When he came in for statement No. 2, the government
24  again was sure that there had to be accomplices and the like,
25  and there appears to be, there's some indication that there

1  may or may not have been, that they had evidence that there
2  was.

3          So, what we have is that by the time the threats
4  come in from the MCC that are now reported to the MCC as
5  officials because Mr. Estell understands that he can't do
6  anything to protect his family on the outside, he tells the
7  MCC, and the officials contact the Assistant U.S. Attorney,
8  and they take the whole story.

9          The question, Judge, is:  Then what happens?  And I
10 think that's a fair argument if you want to challenge
11 Mr. Estell's credibility, with how this information came to be
12 known to the government.  And it would be unfair with respect
13 to the defendant to -- on the one hand to argue that this is
14 fabricated without allowing the defendant to say, "Listen, I
15 gave them everything that I did.  I gave them everything that
16 I know.  And I don't know what they did with it."  And I think
17 that's a fair argument to make.

18          THE COURT:  Okay.  It sounds like we have a new
19 motion *in limine*.  You said you were going to file a brief on
20 motion *in limine* No. 1 perhaps on August 30th.  Let me move
21 that up to August 23rd, and why don't you also brief the issue
22 that's now been raised regarding the adequacy of the
23 government's investigation.

24          And then, Mr. Mitchell, if you'd like to file a
25 response, let me ask that you do so by September 3rd.

1          MR. MITCHELL:  Yes, Judge.

2          THE COURT:  And let's come back in -- and tell me if

3     this doesn't work for you.  Let's come back in on

4     September 6th, which is the Friday before trial, at 9:30, to

5     tie up any loose ends that we're leaving today.  Is that all

6     right with both sides?

7          MR. MITCHELL:  Yes, Judge.

8          MR. KING:  Yes, your Honor.  I'm sorry.  I just

9     didn't hear the last couple of words.

10          THE COURT:  Tie up some loose ends.

11          MR. KING:  Thanks, your Honor.

12          THE COURT:  And I'll give you a ruling on the 609(a)

13     motion.  I'll give you a ruling on this new motion *in limine*.

14     We'll see if we have any more clarity regarding the other

15     incidents and maybe figure out how we're going to address

16     that.

17          Okay.  Is there -- that ends the motions *in limine*,

18     at least for now.  Is there anything else that the parties

19     would like to address?

20          MR. KING:  No, your Honor.  As I alluded to before,

21     the government is still working on the destruction order for

22     the phones, but we may come to you this week with a motion to

23     see if we can determine some location of phones.  So, we'll

24     shoot a copy to Mr. Mitchell and see.  If we can't agree, I'll

25     motion it up.

1       THE COURT:  Okay.  All right.  Anything else?

2           MR. MITCHELL:  I don't have anything, Judge.

3           THE COURT:  Okay.  Everything -- everything of note

4    that took place today, I'll set forth in the order that will

5    issue today or tomorrow, and it will give the briefing

6    schedule and the like, and it will also set the September 6th

7    hearing.

8           MR. KING:  Thank you.

9           MR. MITCHELL:  Thank you, Judge.

10           THE COURT:  Thank you.

11       (Which were all the proceedings heard.)

12                      CERTIFICATE

13    I certify that the foregoing is a correct transcript from

14    the record of proceedings in the above-entitled matter.

15

16    */s/Charles R. Zandi*              *August 18, 2014*

17    Charles R. Zandi              Date
      Official Court Reporter

18

19

20

21

22

23

24

25