NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Submitted February 11, 2016
Decided March 10, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 14-1655 | |
| UNITED STATES OF AMERICA,<br>　*Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 12 CR 416 |
| CHARLES B. ESTELL,<br>　*Defendant-Appellant*. | Gary Feinerman,<br>*Judge*. |

**O R D E R**

　　Charles Estell was charged with armed bank robbery, 18 U.S.C. § 2113(a), (d), and brandishing a firearm during and in relation to that crime, *id.* § 924(c)(1)(A)(ii). He testified at trial that he was forced to rob the bank by men who threatened to harm his fiancée and infant son. The jury disbelieved this defense, and the district court sentenced him to a total of 390 months' imprisonment. Estell has filed a notice of appeal, but his newly appointed lawyer asserts that the appeal is frivolous and seeks to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). Estell opposes counsel's motion. *See* Cir. R. 51(b). Counsel's brief in support of her motion explains the nature of the case and addresses issues that an appeal of this kind might be expected to involve. Because

Case: 1:12-cr-00416 Document #: 179 Filed: 04/01/16 Page 2 of 7 PageID #:2495
Case: 14-1655　Document: 00712731355　Filed: 08/10/2016　Pages: 7

No. 14-1655　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2

the analysis in the brief appears to be thorough, we limit our review to the subjects counsel discusses plus the additional contentions in Estell's response. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

After closing time on June 2, 2012, Estell dropped through the ceiling of the vault at a Bank of America branch in Oak Lawn, Illinois. He pointed a handgun at the two employees in the vault and forced them to the floor before binding their hands and ankles and placing duct-tape over their mouths. Estell was calm, the two employees told the jury, and said he just wanted to take the bank's money without hurting them. He escaped through the ceiling with about $230,500 but triggered a silent alarm on the way out. The police arrived in time to see Estell on the roof breaking through a window of the adjacent building, where he managed to evade capture for 10 hours.

The next day investigators surmised that Estell had entered the bank through a hole created by removing a rooftop vent. On the roof they also found the bank's money, a loaded handgun, and keys to a GM vehicle. With keys in hand the investigators walked the nearby streets pressing the key fob until they heard a sound emitted from a Cadillac Escalade parked a block from the bank. The investigators unlocked the Escalade, performed a safety search, and then searched it again after towing the vehicle and obtaining a warrant. They found Estell's identification, a saw, and a sales receipt dated two months earlier for a small camera mounted on a flexible cable. Also inside were notes, in Estell's handwriting, describing the bank's employees and their cars and detailing their work hours. A cellphone found in his pocket had photos of the bank's interior, and the phone's web browser history showed searches for the model of vault at that branch.

Estell testified that four unknown men broke into his home three days before the robbery and demanded money. They beat him until he lost consciousness, he said, and when he awoke in an unfamiliar location, the assailants beat him again and threatened to kill him. (A medical exam after his arrest, though, showed only a few small cuts on his forearms.) The kidnappers forced him to perform the Internet searches on his phone before driving him to the bank in his Escalade with his head covered and taking him onto the roof, where the hole already was cut. He was given duct tape, zip ties, and the gun and told that he and his family would die if he didn't rob the bank.

This was not the story he told after his arrest. Before the gun and keys were found, Estell had offered to cooperate and told an FBI agent that he took a bus to the bank and entered with an unloaded gun, which he discarded (along with the money) in

Case: 1:12-cr-00416 Document #: 179 Filed: 04/01/16 Page 3 of 7 PageID #:2496
Case: 14-1655　　Document: 00712731355　　Filed: 04/01/2016　　Pages: 7

No. 14-1655　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

a yard behind the bank. He said that he robbed the bank with help from an employee because he was jobless and destitute. Two weeks later Estell told a different FBI agent that he owed $200,000 to a drug dealer who was threatening him and his family.

It wasn't until six months after the robbery, though, that Estell's story about being kidnapped first materialized. In a three-way call initiated from jail using his fiancée as intermediary (a call that the facility recorded), Estell discussed the purported kidnapping and robbery with an unidentified man, who said during the call that they "wouldn't be having these mother-fucking problems" if Estell had "went on and robbed that mother-fucking bank like I told you punk ass." The man threatened to "finish the job" of killing Estell. Afterward the jail intercepted a letter to Estell containing a photo of a man with his head covered. Estell was interviewed again and said that the man on the phone was one of the four assailants. His previous stories, Estell told the FBI, had been lies.

The investigation and Estell's changing stories prompted three evidentiary rulings that are relevant here. First, the court refused to suppress the items found in Estell's vehicle. Next, at the government's request, the court prohibited Estell from arguing about the adequacy of the robbery investigation. And, third, the court excluded as hearsay portions of the recorded phone conversation in which the purported kidnapper recounts the alleged abduction and robbery plot.

Once found guilty, Estell demanded that his appointed lawyer be discharged, and after a hearing, *see Faretta v. California*, 422 U.S. 806, 835 (1975), he was allowed to represent himself. He moved for a new trial claiming ineffective assistance of counsel, but the district court denied that motion without prejudice, saying it was best saved for a postconviction proceeding under 28 U.S.C. § 2255. Estell also moved to dismiss the indictment. He argued, first, that prosecutors had engaged in misconduct before the grand jury by allowing an FBI agent to testify that he didn't know how long it had taken to penetrate the bank's roof, by not presenting evidence supposedly favorable to Estell's coercion defense, and by misreporting the gun's serial number. Estell further argued that prosecutors had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the agent's testimony about the time needed to cut through the roof. The district court gave several reasons for rejecting these contentions, including that the jury's verdicts rendered harmless the claim of grand jury abuse and that the agent's testimony about the hole in the roof wasn't exculpatory.

The district court found Estell to be a career offender, *see* U.S.S.G. § 4B1.1, based on a 1994 federal conviction for conspiracy to distribute crack cocaine (for which he was incarcerated through 2003), a 2007 conviction in Illinois for carjacking, and a 2008 conviction in California for possessing marijuana for sale. The court calculated a guidelines imprisonment range of 360 months to life and imposed a total of 390 months. The court also imposed 5 years of supervised release, with two special conditions. The court didn't explain why those conditions were necessary, and neither did the court orally pronounce all of the standard conditions included in the written judgment.

In her *Anders* submission counsel evaluates, but correctly rejects as frivolous, a possible challenge to the sufficiency of the evidence. *See* 18 U.S.C. §§ 2113(a), (d); 924(c)(1)(A)(ii); *United States v. Simmons*, 581 F.3d 582, 586 (7th Cir. 2009) (discussing elements of § 2113(d)); *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003) (discussing elements of § 924(c)(1)). Estell never moved for a judgment of acquittal, *see* FED. R. CRIM. P. 29, so his convictions must stand absent a showing of a manifest miscarriage of justice. *See United States v. Clark*, 787 F.3d 451, 459–60 (7th Cir. 2015). That's inconceivable; Estell was seen entering, and found hiding in, the building next door to the bank, which, along with the employees' testimony, the bank's surveillance videos, and the physical evidence found on the bank's roof and in the defendant's vehicle, provided overwhelming evidence of guilt. Moreover, the issue for the jury was not if, but why, Estell robbed the bank, and the jurors were entitled to disbelieve his coercion defense. That defense, which rested on Estell's testimony, is impossible to reconcile with the photos from his phone showing that he had cased the bank and the notes from his car reflecting meticulous preparation.

Counsel also asserts that Estell does not have a nonfrivolous claim concerning the denial of his posttrial motion to dismiss the indictment. We agree. Putting aside that Estell's allegation of perjury by the FBI agent has no support in the record, the district court was correct that claims of grand jury abuse become moot if a petit jury finds the defendant guilty. *See United States v. Mechanik*, 475 U.S. 66, 72–73 (1986); *United States v. Philpot*, 733 F.3d 734, 741–42 (7th Cir. 2013).

Also frivolous, says appellate counsel, would be a challenge to the denial of Estell's motion to suppress. Investigators had found GM keys on the bank's roof near the loot and a handgun, and they had probable cause to search whatever vehicle those keys matched. *See United States v. Foxworth*, 8 F.3d 540, 542, 545 (7th Cir. 1993); *United States v. Rivera*, 825 F.2d 152, 158 (7th Cir. 1987).

Case: 1:12-cr-00416 Document #: 179 Filed: 04/01/16 Page 5 of 7 PageID #:2498
Case: 14-1655    Document: 00712731355    Filed: 04/01/2016    Pages: 7

No. 14-1655                                                                                    Page 5

And, finally, concerning the trial, appellate counsel correctly declines to pursue a *Brady* claim proposed by Estell, who protests that the government waited until two weeks before trial to disclose an assortment of information. Yet even if *Brady* compelled the release of any of this information, that opinion simply requires that disclosures be made sufficiently in advance for effective use of the information by the defendant. *See United States v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011). And counsel adds, correctly, that the government was not obligated to produce the FBI agent's grand jury testimony because he did not testify at trial. *See* 18 U.S.C. § 3500(b); *United States v. Withers*, 972 F.2d 837, 845 n.9 (7th Cir. 1992).

In his Rule 51(b) response, Estell further suggests that the district court erred by preventing him from arguing that the government's investigation of the robbery was deficient, and by excluding from evidence portions of the telephone call recorded by the jail. But trial judges have discretion to limit argument on tangential issues that could confuse the jury, and that includes a defendant's complaints about the adequacy of the government's investigation. *See United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999); *United States v. Patrick*, 248 F.3d 11, 21–23 (1st Cir. 2001). Establishing Estell's coercion defense was his responsibility, not the government's. *See Dixon v. United States*, 548 U.S. 1, 15 (2006); *United States v. Lewis*, 641 F.3d 773, 782 (7th Cir. 2011); *United States v. Rovetuso*, 768 F.2d 809, 818 (7th Cir. 1985).

Moreover, a contention that the district court was required to permit the entire telephone conversation to be played for the jury would be frivolous. Estell purportedly had returned a call from one of the unknown kidnappers at a number given his fiancée. But he never plausibly explained how it would not be a hearsay use to prove through the recording what the other man said about the purported kidnapping. *See* FED. R. EVID. 801(c), 802; *Lewis*, 641 F.3d at 782, 784–85. Even so, the court did allow Estell to play those parts of the call where he was threatened. And the court also permitted Estell to recount *everything* the other man had said during the call, and that hearsay offered through Estell is the same hearsay that he wanted to offer through the recording.

Concerning the trial, Estell concludes with several frivolous claims of prosecutorial misconduct. He insists that the government referred to facts not in evidence by mentioning the receipt found in his car as well as by stating that he had "assaulted" the bank's two employees. Prosecutors may not misstate the evidence, *see United States v. Haldar*, 751 F.3d 450, 459–60 (7th Cir. 2014); *United States v. Klebig*, 600 F.3d 700, 718 (7th Cir. 2009), but that did not happen here. The receipt was for a

No. 14-1655 Page 6

small camera mounted on a flexible cable, and an investigator testified about how that camera could have been used to see into inaccessible areas like air vents. And the two employees testified that Estell had pointed his gun at their heads, which fully justified the government in asserting that they had been "assaulted." *See United States v. Jones*, 188 F.3d 773, 778–79 (7th Cir. 1999).

That leaves Estell's sentencing. Counsel first questions whether to claim that it was error to allow Estell to represent himself at sentencing. That contention would be frivolous because the district court ensured that Estell's choice to proceed without counsel was knowing and intelligent. *See United States v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010); *United States v. Johnson*, 534 F.3d 690, 693–94 (7th Cir. 2008). The court conducted a formal hearing, cautioned Estell about the risks of self-representation, and inquired into his background and mental health. Estell said unequivocally that he was experienced and knowledgeable about criminal proceedings, and that he wanted to represent himself.

Counsel also rejects challenging the application of the career offender guideline, U.S.S.G. § 4B1.1, and the denial of a downward adjustment for acceptance of responsibility, *id*. § 3E1.1. Estell surely wasn't entitled to the latter discount after going to trial and presenting a defense that the jury rejected as phony. *See id.* § 3E1.1(a), cmt. nn.1–2; *United States v. DeLeon*, 603 F.3d 397, 407–08 (7th Cir. 2010); *United States v. Hendricks*, 319 F.3d 993, 1009 (7th Cir. 2003). And Estell's prior felony convictions, two for controlled substance offenses and a third for carjacking, made him a career offender. At sentencing the defendant did not dispute that "vehicular hijacking" as defined by Illinois law is a crime of violence. *See* 720 ILCS 5/18-3 (2007) (defining as a statutory element the use, or threat of imminent use, of force). And although he did argue that age disqualified his 1994 drug conviction, *see* 21 U.S.C. § 841(a)(1), he was incarcerated through 2003—within the qualifying 15-year period. *See* U.S.S.G. § 4A1.2. Estell's other drug conviction, from 2008, did not even have to be considered.

An appellate claim challenging the reasonableness of Estell's total imprisonment of 390 months likewise would be frivolous. That total includes a 90-month consecutive term for the firearm offense, which, as counsel notes, does not raise any concern under the Double Jeopardy Clause because Congress intended consecutive sentences. *See United States v. Gonzales*, 520 U.S. 1, 9–10 (1997); *United States v. Harris*, 832 F.2d 88, 90–91 (7th Cir. 1987). Moreover, 390 months is within the guidelines range and thus presumptively reasonable, *see Rita v. United States*, 551 U.S. 338, 347 (2007), and counsel has not identified anything in the record rebutting that presumption. The district court

Case: 1:12-cr-00416 Document #: 179 Filed: 04/01/16 Page 7 of 7 PageID #:2500
Case: 14-1655   Document: 00712731355   Filed: 04/01/2016   Pages: 7

No. 14-1655 Page 7

considered in depth the factors in 18 U.S.C. § 3553(a), including the seriousness of Estell's meticulously planned and violent offenses and the need to incapacitate him, even when he is released from prison as an old man. The court explained that the possible de facto life sentence was justified by the danger Estell poses to the community. The court further took into account Estell's difficult childhood and the support he provided to his family and child, but balanced these mitigating factors against Estell's long criminal history.

Finally, although counsel did identify a meritorious challenge to the conditions of Estell's supervised release, he directed her to not pursue that challenge. *See United States v. Bryant*, 754 F.3d 443, 447 (7th Cir. 2014).

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.